UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS SNOWDEN, III,<br><br>Plaintiff,<br><br>v.<br><br>M. YULE, et al.,<br><br>Defendants. | No. 2:17-cv-2167 DJC AC P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Before the court is defendants' motion for summary judgment. ECF No. 76. Plaintiff filed an initial response to the motion which was docketed as an opposition, ECF No. 77,[1] to which defendants relied, ECF No. 78. Plaintiff then filed an opposition to summary judgment, ECF No. 79, which defendants moved to strike, ECF No. 80. The undersigned denied the motion to strike, ECF No. 88, and defendants replied to the second opposition as directed by the court. ECF No. 89. The matter is thus fully briefed.

////

////

---

[1] This document was captioned as a request for denial of the motion for summary judgment, but its content amounted to a request for extension of time to gather evidence in support of a formal opposition. ECF No. 77.

1

I. BACKGROUND

This case proceeds on plaintiff's First Amended Complaint (FAC).  ECF No. 22.  By order filed August 13, 2019, the undersigned found service of the FAC appropriate for defendants Yule, Housley and Wong, on plaintiff's Eighth Amendment claims that defendants were deliberately indifferent to plaintiff's serious medical needs.  ECF No. 26.  Defendants moved to dismiss, ECF No. 48.  That motion was denied on March 25, 2020.  ECF Nos. 57 (Findings and Recommendations), 60 (order adopting same).

In sum, the FAC alleges that plaintiff seriously injured his left leg during a handball game at Mule Creek State Prison.  Nurse Yules, Nurse Practitioner Housely, and Dr. Wong, on various dates thereafter, each allegedly failed to properly treat plaintiff's injury and pain.

II. THE MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment on grounds that plaintiff cannot prove that any of them ignored or failed to respond to his medical needs or caused him harm.  Defendants contend that all treatment they provided was medically appropriate and consistent with CDCR and California Prison Health Care Services (CPHCS) guidelines.  Defendants also argue that they are entitled to qualified immunity.  Plaintiff argues in opposition that each of the defendants acted with deliberate indifference and violated his clearly established rights.

III. LEGAL STANDARDS

A. Summary Judgment Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the

1  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see
2  whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal
3  quotation marks omitted).

4  "In evaluating the evidence to determine whether there is a genuine issue of fact, [the
5  court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls
6  v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the
7  opposing party's obligation to produce a factual predicate from which the inference may be
8  drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to
9  demonstrate a genuine issue, the opposing party "must do more than simply show that there is
10 some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations
11 omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the
12 non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391
13 U.S. at 289).

    B.  Eighth Amendment

15  In order to state a § 1983 claim for violation of the Eighth Amendment based on
16 inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to
17 evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106
18 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and
19 that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294,
20 299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). A serious
21 medical need exists if the failure to treat a prisoner's condition could result in further significant
22 injury or the unnecessary and wanton infliction of pain. See Wood v. Housewright, 900 F. 2d
23 1332, 1337-41 (9th Cir. 1990). The requisite state of mind is "deliberate indifference." Hudson
24 v. McMillian, 503 U.S. 1, 4 (1992).

25  In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very strict
26 standard which a plaintiff must meet in order to establish "deliberate indifference." Negligence is
27 insufficient. Farmer, 511 U.S. at 835. Even civil recklessness (failure to act in the face of an
28 unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at

836-37.  Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842.  A prison official acts with deliberate indifference only if he subjectively knows of and disregards an excessive risk to inmate health and safety.  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding the appropriate course of treatment does not by itself amount to deliberate indifference to serious medical needs.  Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  Toguchi, 391 F.3d at 1058 (alteration in original) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

C. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court must consider (1) whether the undisputed facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident.  Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The two prongs need not be decided sequentially.  Id. at 236.

IV.   EVIDENTIARY ISSUES

Defendants have filed objections to plaintiff's evidence.  ECF No. 90.  For the reasons explained below, the objections are sustained in part and overruled in part.  Reserving the question of relevance, the court will consider plaintiff's declaration and the medical records he has submitted under the standards set forth in Fed. R. Civ. P. 56.

////

Defendants object first to the Declaration of inmate Oillie Tinoco, ECF No. 79 at 20, on grounds that it is irrelevant, contains hearsay, and that the declarant lacks medical training or experience to render opinions regarding appropriate courses of treatment or appropriate prescriptions. The declaration does not purport to offer an expert opinion or diagnosis. Although it contains hearsay in the form of statements made by plaintiff to Mr. Tinoco in the immediate aftermath of his injury, such statements fall within well established exceptions to the hearsay rule. See Fed. R. Evid. 803(1) (present sense impressions), 803(3) (then existing physical condition). To the extent Mr. Tinoco reports his own observations of plaintiff's injuries, his statements are not inadmissible. However, the admissible statements are limited to the fact that plaintiff seriously injured his left lower leg and ankle on February 2, 2016. That fact is not disputed. Accordingly, the Tinoco declaration will be disregarded as irrelevant.

Defendants next object to plaintiff's own declaration, ECF No. 79 at 33-40, on grounds plaintiff lacks personal knowledge as to some matters, presents hearsay, lacks medical training or experience to give opinions regarding appropriate courses of treatment or appropriate prescriptions, and that the declaration includes speculative and conclusory statements. Although the declaration undoubtedly contains statements that would not be admissible at trial for various reasons including those cited by defendants, Mr. Snowden is a competent witness as to his own experiences. In the interests of justice, the court will accept the Snowden declaration as a proffer of testimony and consider it in determining whether plaintiff has proffered evidence that could be made admissible at trial and which demonstrates the existence of a jury question.

Finally, defendants object to medical records plaintiff has submitted as Exhibits 1-7, ECF No. 79 at 41-88, on grounds that they lack authentication. "At the summary judgment stage, [the court does] not focus on the admissibility of the evidence's form. [It] instead focus[es] on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (citations omitted); see also Aholelei v. Haw. Dep't of Pub. Safety, 220 F. App'x 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment "which consisted primarily of litigation and administrative documents involving another prisoner and letters from other prisoners" and could be made admissible at trial). In other words, the court

can consider evidence submitted on summary judgment if its *contents* could be presented in an admissible form at trial.  Fraser, 342 F.3d at 1037.  Lack of authentication is a problem readily curable at trial.  Defendant does not affirmatively argue that any of the medical records are not in fact authentic.  Because the content of the exhibits could be made admissible at trial, the objection is overruled.  Plaintiff's handwritten notations on some documents will be disregarded.

V.  UNDISPUTED FACTS

Unless otherwise noted, the following facts are undisputed by the parties or as determined by the court upon review of the record.[2]

Plaintiff was housed at Mule Creek State Prison from December 2015 until approximately November 2016.  DSUF ¶ 1.  On February 2, 2016, he injured his lower left leg during a handball game. DSUF ¶ 6.  Plaintiff's first request for medical attention related to the injury was on February 7, 2016, when he completed a Health Care Services Request Form.  DSUF ¶ 7.

Plaintiff was first seen for the injury on February 12, 2016, in the Triage, Treatment and Assessment clinic, by M. Yule, R.N.  DSUF ¶ 8.  Yule declares that he observed plaintiff to walk with an even, steady gait (DSUF ¶ 11; ECF No. 76-4 (Yule Decl.) at ¶ 2); plaintiff declares that he was limping.[3]  Yule declares that he visually examined plaintiff's left leg and ankle,[4] and that he evaluated plaintiff's left foot extension and flexion, which were normal.  DSUF ¶ 12; Yule Decl. ¶ 2; see also ECF No. 76-4 at 6-7 (contemporaneous Nursing Encounter Form, documenting same).[5]  Yule concluded from plaintiff's extension and flexion that there were no indications of a torn Achilles tendon, and that plaintiff did not need to be seen by a doctor.  He concluded that the appropriate treatment was Naproxen for pain, elevation of the left foot, and a return to clinic if plaintiff became unable to extend or flex his foot.  DSUF ¶ 13; Yule Decl. at ¶

---

[2] Defendants' Separate Statement of Undisputed Material Facts is at ECF No. 76-3.  Plaintiff's response is at ECF No. 79 pp. 22-28.
[3] ECF No. 79 at 23, ¶ 11.
[4] Plaintiff avers that Yule did not examine him but "only asked me to raise my pant leg up." ECF No. 79 at 23, ¶ 12.  The court finds it undisputed that Yule visually examined the leg, but notes that the extent and adequacy of the visual inspection is disputed.
[5] Plaintiff's own declaration says that "I did Not have good extension and flexion of my left foot." ECF No. 79 at 36, ¶ 36.

2-3; see also ECF No. 76-4 at 6-7.[6]  The NSAID prescription was consistent with California Corrections Health Care Services guidelines.  DSUF ¶ 14.

On February 29, 2016, plaintiff submitted a request for a follow up appointment due to continued pain and swelling.  DSUF ¶ 16.  Nurse Yule saw him on March 2 in response to this request, and referred plaintiff to Dr. Wong due to increased swelling.  DSUF ¶¶ 17-18.  Dr. Wong verbally ordered x-rays of plaintiff's lower leg and left ankle, and directed that he be seen in the TTA clinic.  DSUF ¶ 19.  Nurse Practitioner Housley conducted the March 2, 2016, examination.[7]  She reviewed the x-rays, observed swelling and bruising, and noted decreased flexion and extension of the left foot as well as tenderness in the calf.  DSUF ¶¶ 20-21.[8]  Housley concluded that plaintiff had a tendon sprain.  DSUF ¶ 22.  She ordered the ankle to be wrapped in an Ace bandage to prevent further swelling, recommended a cold pack and elevation of the leg, and follow up treatment in two weeks.  DSUF ¶ 23.  She also issued a 7 day lay in order so that plaintiff could rest and keep the ankle elevated.  DSUF ¶ 24.

Plaintiff did not seek follow-up care until March 20, 2016, due to mental health issues and because he was using heroin and morphine he received from others to control his pain.  DSUF ¶ 26; ECF No. 76-8 (Snowden Depo.) at 11-12.  He completed a Health Care Services Form on March 20 because he was unable to get heron or morphine and still had symptoms.  DSUF ¶ 27.  In response to his request, plaintiff was seen by M. Yule on March 24, 2016.[9]  DSUF ¶ 28.  Plaintiff was not wearing the Ace bandage Housley had recommended.  DSUF ¶ 29.  Yule noted his observation of decreased swelling and increased range of motion compared to March 2.  DSUF ¶ 29.  Plaintiff disputes the accuracy of these observations.  Yule recommended that

---

[6] Plaintiff contends that Yule never told him he had a sprain, and never documented a sprain.  However, plaintiff does not identify any evidence that would suggest Yule did not come to this conclusion.  The contemporaneous nursing notes are consistent with Yule's understanding that plaintiff had a strain rather than something more serious.  See ECF No. 76-4 at 6-7 (Ex. 1 to Yule Decl.).

[7] Again, plaintiff disputes that defendant "examined" him, but his quarrel is with the extent of the examination and adequacy of the treatment provided.  Plaintiff does not dispute that NP Housley was the care provider who saw him in TTA on March 2, 2016.

[8] Plaintiff declares that Housley performed none of the tests she reports.  ECF No. 79 at 37, ¶ 40.

[9] Plaintiff disputes that he was "examined," but not that he saw Yule on this date.

8

plaintiff continue to take Naproxen and referred him to a doctor for follow up in 14 days. DSUF ¶ 31.

On or about April 4, 2016, plaintiff was diagnosed with a ruptured Achilles tendon by Dr. Rudas. DSUF ¶ 32. Dr. Rudas prescribed Tylenol 3 with codeine, ordered a CAM boot and crutches, and ordered a 30 day lay in and cell feeding for plaintiff. DSUF ¶¶ 33-34. Plaintiff was scheduled for surgical repair on April 12, 2016, but the surgery was rescheduled to April 15 when plaintiff ate before the originally scheduled procedure. DSUF ¶ 35.

On April 13 Yule saw plaintiff because he complained of nausea from the Tylenol 3. Plaintiff was scheduled to see Dr. Wong the next day; Yule noted plaintiff's complaints but did not recommend any changes. DSUF ¶ 36.[10]

On April 14 plaintiff saw Dr. Wong for a surgical clearance visit. DSUF ¶ 37. Dr. Wong cleared plaintiff for surgery, and told him not to eat or drink that evening. DSUF ¶¶ 38-39. Dr. Wong made no changes to plaintiff's pain medications and did not issue any orders regarding housing, as the surgery was the next day. DSUF ¶¶ 40-41.[11]

The surgery did not go forward on April 15 because plaintiff had eaten breakfast. DSUF ¶ 42. Surgery was rescheduled for April 19, but on that date plaintiff refused to go. DSUF ¶¶ 43-44. On April 20 plaintiff was hospitalized at an outside facility after taking "bath salts" and cutting his face, scalp, ear and shoulder, requiring sutures. DSUF ¶ 45. On return to the prison, plaintiff was housed in Administrative Segregation for 30 days. DSUF ¶ 46. Nurse Practitioner Housley saw plaintiff on April 26 in the Administrative Segregation Unit in relation to suture removal. DSUF ¶ 47. She also completed a request for services to get the Achilles tendon repair surgery rescheduled. DSUF ¶ 48. The request form did not detail the clinical justification for the surgery request.[12]

---

[10] Plaintiff argues that Yule "had a duty" to recommend changes to Dr. Wong, but he does not point to any evidence that puts the facts of the April 13 encounter in dispute.
[11] Plaintiff disputes the reasons for Dr. Wong's failure to do these things, and argues that he had a duty to prescribe more effective medication and to issue orders including a lower bunk chrono.
[12] Defendant Housley declares that such notations were unnecessary because plaintiff's chart already documented the need for the surgery. ECF No. 76-5 (Housley Decl.) at 2, ¶ 12. Plaintiff (continued…)

None of the defendants interacted with plaintiff again during the relevant period. On May 23, 2016, non-defendant Dr. Smith requested a lower bunk accommodation for plaintiff. DSUF ¶ 53. In June 2016, non-defendant Dr. Vaughn prescribed methadone for pain and rescheduled plaintiff's surgery. DSUF ¶ 54.

VI. ANALYSIS

    A. Issues Relating to All Defendants

Plaintiff has insisted throughout this litigation that his Achilles tendon ruptured during the handball game on February 2, 2016, and that Nurse Yule, Nurse Practitioner Housley, and Dr. Wong all failed to identify and treat the rupture. The record does not support this assertion. Plaintiff was diagnosed with a ruptured Achilles tendon by Dr. Rudas on April 4, 2016, two months after his handball injury. Plaintiff points to Dr. Rudas's April 4, 2016, report (ECF No. 79 at 42) as evidence that the rupture occurred on February 2. That report, however, neither asks nor purports to answer the question whether plaintiff's tendon ruptured on February 2 or on a later date as a consequence of the February 2 injury. Dr. Rudas reports plaintiff's account of the February 2 handball incident, and notes that plaintiff re-injured the same leg on April 4. He diagnosed a ruptured Achilles tendon and parenthetically noted "(from 2/2/16 sports injury)," but this appears to be merely a reference to plaintiff's self-report; in any event, it does not indicate a medical conclusion that the rupture happened *on* February 2 rather than following *from* that injury. Plaintiff also relies on an April 7, 2016, report of Dr. Dowbak (ECF No. 79 at 44), which similarly states that plaintiff's Achilles tendon was ruptured and that plaintiff had reported a prior injury. No rational jury could conclude, based on the April 2016 reports, that plaintiff's Achilles tendon ruptured on February 2, 2016, and that he presented at all relevant medical appointments with a ruptured tendon.

This factual issue, however, is not dispositive one way or the other of plaintiff's claim. On the one hand, the misdiagnosis of a ruptured tendon as a strained or sprained tendon, without more, would at most constitute negligence or medical malpractice. Neither is sufficient to

---

contends the form was inadequately completed which delayed his surgery, but his own declaration is not competent evidence on those points.

10

1    establish deliberate indifference. Farmer, 511 U.S. at 835-37. On the other hand, plaintiff need
2    not have ruptured his tendon on February 2, 2016, in order to prevail. If he can identify evidence
3    supporting a conclusion that any defendant acted with deliberate indifference to an injury short of
4    rupture but nonetheless constituting a serious medical need,[13] he can defeat summary judgment.
5    The dispositive question as to each defendant is whether they acted with subjective knowledge of
6    and deliberate disregard for an excessive risk to plaintiff's health and safety. Toguchi, 391F.3d at
7    1057.

          B.  Nurse M. Yule

        As to his initial encounter with Yule on February 12, 2016, plaintiff has not identified
evidence sufficient to support deliberate indifference. Plaintiff's insistence that Yule altogether
failed to examine him is belied by the record; plaintiff is really making the rhetorical point that, in
his opinion, the examination was so cursory that it did not count as an examination at all.
Plaintiff's personal opinion as to the medical adequacy of the examination does not raise a triable
issue. Plaintiff attempts to dispute, relying on his own declaration, the accuracy of the
observations on which Yule relied for his conclusion that the tendon was sprained.[14] This does
not, however, create a triable issue as to whether Yule subjectively concluded the ankle was
merely sprained. An erroneous conclusion about the degree of injury amounts to misdiagnosis,
which is insufficient as a matter of law to support Eighth Amendment liability. See Wilhelm v.
Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's decision not to operate because he
incorrectly believed plaintiff did not have a hernia was negligent misdiagnosis or disagreement
with diagnosing doctor and did not constitute deliberate indifference).

        The record does not contain facts from which a reasonable jury could conclude that Yule
acted with a culpable state of mind. Given his assessment of plaintiff's injury, Yule's
recommendations to elevate the leg and take NSAIDs for pain were consistent with applicable

---

[13] Defendants do not contest that plaintiff's injury presented a serious medical need.
[14] As noted above, Yule declares and his report reflects that plaintiff walked with a normal gait; plaintiff declares that he was limping. Yule declares and contemporaneously reported that plaintiff's left foot extension and flexion were within normal limits; plaintiff declares that is not so. Compare Yule Decl. (ECF No. 76-4) ¶¶ 2-3; Pl. Decl. (ECF No. 70 at 36) ¶ 36.

standards including California Corrections Health Care Services guidelines. Yule Decl. at ¶ 3 (CHCS guidelines); see also Decl. of Richard Heater, M.D. (ECF No. 76-7) at ¶ 4 (opining that Yule provided appropriate treatment). Plaintiff has identified no medical evidence to the contrary, and his reliance on conclusory assertions is unavailing. See Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (inmate's difference of opinion with medical provider about appropriate course of treatment is insufficient to support deliberate indifference). Even if Yule's assessment had been incorrect, plaintiff has not identified evidence sufficient to establish that Yule knew plaintiff's tendon was ruptured or was likely to rupture, and that he deliberately failed to take action responsive to that knowledge. See Toguchi, 391 F.3d at 1057. Accordingly, this encounter cannot support a finding of deliberate indifference.

Neither do any of plaintiff's subsequent encounters with Yule support an inference of deliberate indifference. On March 2, Yule observed that plaintiff's condition had worsened and promptly referred him to Dr. Wong who ordered X-rays the same day. The referral demonstrates due care for plaintiff's condition on that date.

The March 24, 2016, encounter is devoid of circumstances that could lead a jury to conclude Yule was aware of a serious risk to plaintiff's health or safety from his recommendation of continued rest and NSAIDs for pain. The fact that plaintiff was diagnosed with a ruptured tendon on April 4 does not support an inference that Yule knew on March 24 that such rupture had occurred or was imminent. Even if defendant should have known that further injury was imminent, that would not be enough to establish deliberate indifference. See Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002) ("If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.").

The April 13 visit, which followed the rupture diagnosis, addressed plaintiff's complaints about Tylenol 3 and desire for different pain medication. That plaintiff was unhappy with Yule's response is not material to the deliberate indifference analysis. No jury could find that Yule believed his own failure to recommend medication changes would likely result in significant suffering or injury to plaintiff, especially when Dr. Wong—the clinician with prescribing

1  authority—was scheduled to see plaintiff the next day. Accordingly, the evidence does not
2  support a finding of deliberate indifference.
3        In sum, plaintiff has not identified evidence that would support a jury finding in his favor
4  on the Eighth Amendment claim against M. Yule. Defendant is entitled to summary judgment.

          C. <u>Nurse Practitioner Housley</u>

6        Although plaintiff argues strenuously that Housley's examination on March 2, 2016, was
7  inadequate and that her conclusion of a tendon sprain was wrong and led to inadequate treatment,
8  he has not identified evidence sufficient to support a finding of deliberate indifference. The facts
9  that Housley ordered an Ace bandage for swelling, recommended elevation of the leg and a cold
10 pack, and ordered a lay in to accommodate plaintiff's compliance with her recommendations, all
11 reflect reasonable concern for plaintiff's condition as Housley assessed it. <u>See</u> Heater Decl. (ECF
12 No. 76-7) at ¶ 5 (opining that Housley provided appropriate treatment). Even if Housley's
13 diagnosis of a tendon sprain was incorrect, misdiagnosis alone can amount to no more than
14 negligence or malpractice. <u>See</u> <u>Estelle</u>, 429 U.S. at 106 ("[m]edical malpractice does not become
15 a constitutional violation merely because the victim is a prisoner."). And even crediting
16 plaintiff's declaration that Housley did not actually perform the tests she declared that she
17 performed, and which her contemporaneous records document, that would amount to gross
18 negligence or civil recklessness, which are also insufficient to establish an Eighth Amendment
19 violation. <u>See</u> <u>Farmer</u>, 511 U.S. at 836-37; <u>Wood</u>, 900 F.3d at 1334.

20       Housley's April 26 encounter with plaintiff in Ad Seg reflects no arguably deficient care
21 and no evidence from which a jury could find the culpable state of mind necessary for Eighth
22 Amendment liability. On that date Housley reinitiated the process of getting plaintiff's tendon
23 surgery back on track. Plaintiff has identified no evidence that her alleged failure to recount the
24 underlying clinical justification for the surgery on the request form had any consequences for his
25 care.[15]

26       In sum, plaintiff's response to the summary judgment motion fails to demonstrate more

---

[15] To the contrary, the record is replete with evidence that plaintiff's surgery was repeatedly delayed due to his own actions.

13

than his own difference of opinion with Housley regarding her treatment of his tendon injury. That is insufficient as a matter of law to support liability. See Sanchez, 891 F.2d at 242. Plaintiff has also failed to identify evidence that would permit a jury to find in his favor on an essential element of the claim: that Housley acted with the subjective knowledge that plaintiff faced an excessive risk and that she deliberately disregarded that risk. Toguchi, 391 F.3d at 1057. Defendant Housley is therefore entitled to summary judgment. See Celotex, 477 U.S. at 325.

### D. Dr. Sam Wong

None of plaintiff's encounters with Dr. Wong involve facts and circumstances which could support a finding of deliberate indifference. On March 2, 2016, based on Nurse Yule's referral, he verbally ordered X-rays and a TTA evaluation, which took place the same day. This response reflects due concern for plaintiff's condition.

On April 14, Dr. Wong cleared plaintiff for surgery and advised him not to eat or drink beforehand—advice that plaintiff disregarded. Plaintiff focuses on Dr. Wong's failure to order different pain medication, which plaintiff believes was indicated, but plaintiff has not identified any evidence that Dr. Wong's choice was outside the range of medically acceptable alternatives. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (to establish that a difference of opinion between inmate and provider rises to the level of deliberate indifference, plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances). The fact that another doctor ordered a different medication two months later does nothing to establish a deliberately indifferent state of mind on Dr. Wong's part on April 14, 2016. Even if Dr. Vaughn had prescribed a different pain management protocol closer in time to April 14, 2016, that would not make Dr. Wong's choice "medically unacceptable." See Jackson, 90 F.3d at 332. Dr. Heater's declaration indicates it was not. ECF No. 76-7 at ¶ 6.

Similarly, Dr. Wong has declared that on April 14 plaintiff did not meet the criteria for lower bunk housing (Wong Decl. (ECF No. 76-6) at 3, ¶ 8) and plaintiff has not identified potentially admissible evidence to the contrary. Even if Dr. Wong was wrong about plaintiff's eligibility, or assuming he had the authority to override the applicable criteria and order a lower bunk accommodation, there is no evidence to support a conclusion that he acted with subjective

knowledge that his failure to do so would cause plaintiff harm.  The fact that another doctor ordered a lower bunk accommodation on a later date is insufficient to support the claim, which requires evidence of Dr. Wong's state of mind at the time he made the challenged decision.  For all these reasons, Dr. Wong is entitled to summary judgment.

### E. Qualified Immunity

As to each of the three moving defendants, the undersigned has concluded that the record taken as a whole could not lead a rational trier of fact to find for plaintiff.  Accordingly, there is no genuine issue for trial.  See Matsushita, 475 U.S. at 587.   Because defendants are thus entitled to summary judgment on the merits of the Eighth Amendment issue, the court need not address the issue of qualified immunity.

### VII. SUMMARY FOR PRO SE PLAINTIFF

The magistrate judge is recommending that the motion for summary judgment be granted. Your evidence does not show that Nurse Yule, Nurse Practitioner Housley, or Dr. Wong acted in ways that they knew were likely to cause you additional harm or suffering.  Such evidence is required to show a violation of your Eighth Amendment rights.  A difference of opinion with your medical providers is not enough.   Even negligence in responding to your injury and resulting pain is not enough.   Because there is no evidence showing that any defendant acted with the knowledge that their actions created a significant risk to you, and deliberately disregarded that risk, a jury could not find in your favor.

### CONCLUSION

For the reasons explained above, IT IS HEREBY ORDERED that defendants' Objections to Plaintiff's Evidence in Opposition to Motion for Summary Judgment (ECF No. 90) are SUSTAINED IN PART AND OVERRULED IN PART as specified above.

It is FURTHER RECOMMENDED that defendants' Motion for Summary Judgment (ECF No. 76) be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 31, 2023

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE